SINESIO DÍAZ ÁLVAREZ, Plaintiff and Appellant, *v.* ELOÍSA ÁLVAREZ RODRÍGUEZ ET AL., Defendants and Appellees.

No. R-67-326. Decided December 12, 1969.

*Luis A. Archilla Laugier* for appellant. *Carlos D. Vázquez, Héctor Reichard,* and *G. Marrero Ledesma* for appellees.

PER CURIAM: Appellant's contentions are grounded on an option deed for the purchase of gravel from two parcels in one of appellee's properties, in which a term to exercise the option was not fixed. This option was exercised some five years after the date of said deed. The trial court concluded correctly, in our judgment, that it had power to fix the term within which the option should be exercised. It determined that said term was three years, and since the option was not exercised within said term, the same lacked legal efficacy.

The parties executed two contracts on August 30, 1959, by deeds Nos. 50 and 51, before Notary Mario A. Rodríguez Matías. By deed No. 50, appellee Eloísa Álvarez Rodríguez, sold to appellant a 27.33 cuerdas property in Toa Alta, for $10,932, of which appellant paid $3,000 in cash. He agreed to pay some debts amounting to $2,800 and $1,700, and signed a promissory note in favor of the vendor for $3,432 payable in three years in equal annual installments with interest at a rate of 6% annually. By deed No. 51, appellees granted appellant an option for the purchase of gravel from a gravel pit in other properties belonging to appellees, at the rate of 10¢ per meter, for five years to be counted "from the

time he begins to use said gravel." By deed No. 20, executed before Notary Gustavo Marrero Ledesma, on November 3, 1961, appellees leased these properties to Antonio Santos, for a term of five years, by payment of (1) a rental of $30 annually per cuerda; (2) $20 per cuerda for the existing sugarcane sprouts; and (3) 15¢ per square meter in case that "he extracts and uses" gravel from the property for his benefit.

The oral evidence, briefly summarized by the trial court, is related hereinafter.

Appellant testified that he bought the 27.33 cuerdas property from his aunts, so as to help them to get rid of a worrisome economic situation and, also, for "the possibility that in the future perhaps I could exploit the gravel which was on the property to benefit myself and benefit them"; that the gravel pit was situated outside the 27.33 cuerdas property, in other parcels owned by appellees, which, at that time, for several reasons, it was not convenient for them to sell; that that was the reason for signing deed No. 51 concerning said option; that immediately he took steps to begin the exploitation of the gravel; that "At that time nothing could be done, but in or about 1959 the situation began to improve . . . the first thing I did was to take steps with Public Works to obtain permission . . . in order that I could enter inside the government limits"; that he made the $1,500 deposit which was required in that year; that he made studies about the machinery to be installed; that he had to fix a road up to the place where the plant was going to be installed on the 27.33 cuerdas property; that he began to build the plant in 1961 and that it was working about 1962; that after it was installed he sent Cabrera to tell appellees his intention of extracting gravel under the option contract, but that the latter refused since they had entered into a contract with Santos, according to the aforementioned deed No. 20; that then he continued the operation of extracting gravel from his own property and "from that of the government . . . until

the beginning of 1965, at or about the end of 1964 there was hardly anything"; that the plant was owned by Cabrera; that the witness furnished the gravel for which Cabrera paid him 20¢ per meter the first year and 25¢ the second, plus $100 a month as rent.

A Vice-president of the Banco Federal Agrícola testified that in or about 1957, when the 27.33 cuerdas property was segregated to be sold to appellant, it had a market value of $7,000 according to the appraiser.

A certification which evidenced the amounts which plaintiff received during the duration of the exploitation of the plant and Cabrera's business was admitted in evidence to "establish the grounds for the damages."

Teresa Álvarez Rodríguez testified that she sold to appellant the 27.33 cuerdas property at $400 per cuerda because "well, we sold like that, as he was our favorite nephew, and we had debts from the parents at their deaths and we needed money and we preferred to sell to him, he was the favorite, we loved him very much, we wanted to do him the favor of selling the property to him." Afterwards she testified that "When we were already making the sale transactions, he told us to sell him the gravel, we made a contract for ten years and my sister did not want to, I told her that he told me that he was going to set up a plant immediately in 1957. I told my sister, five years go by fast, let us sell to him, more on account of the family relationship, that is why we did it, but we did not know that he was not going to set up the plant; he did not set it"; that "He said, yes, within a month he would start, in 1957 he was going to begin . . . some months . . . I went to him to ask him when was he going to install the plant, as we, my sister likewise, we did not work, the money was finished . . . he said that he was going to install it [the gravel plant], until one day he told me that he was not going to install it . . . afterwards he said that he did not find, he could not install it, he told me that he was not

going to install it. . . . I told him that around there, there was a man who wanted to install the plant, then he told us 'do what you want, do not say that I am going to install it, nor say anything about the municipal road, do what you want,' he told me, do not say that I was going to install it, and we were in a bad situation, we needed to do something, so we leased the property to Santos, he bought the sugarcane, he paid to the Mill."

Antonio Santos testified that he found out about the purchase option of the gravel pit between appellant and appellees when he was notified of the complaint in this case; that he did not know nor had spoken with, nor had seen appellant until after the complaint; that he established his gravel plant in appellees' property in or about November 1962.

It appears in evidence a letter from appellant to appellee Teresa Álvarez Rodríguez, dated July 10, 1962, notifying her that as soon as the government made a demarcation to determine what belongs to the government and what belongs to particular persons, he would begin, through David Cabrera, to extract gravel from his property, in consonance with deed No. 51. On July 23, Mr. Marrero Ledesma answered that letter in the name of Eloísa Álvarez Rodríguez, "that in view of the fact that you did nothing in order to usufruct the contract and in view of the fact that she needed her property to produce capital, she leased the extraction of gravel to a third person, for already a number of months, and that you knew that it has been thus."

In view of the situation thus created, appellant filed a complaint against appellees and Santos, alleging the existence of the deed of sale of gravel between appellant and appellees; that the latter refuse to comply with it; that Santos has plotted with them to violate said contract; that therefore, appellant has sustained damages amounting to $60,000. He requests the court to order the specific performance of the contract and the payment of damages until that time, or the

payment of $60,000 on account of damages sustained by appellant in not being able to extract gravel in consonance with said contract.

In their answer appellees denied certain allegations of the complaint; they alleged that the "option to purchase contract" had been rescinded; they admitted the request of July 10, 1962; and as special defenses alleged, among others, the nullity of the option contract for lack of cause and because its legality and compliance had been left to plaintiff's discretion.

The trial court concluded that although deeds Nos. 50 and 51 dealt about two businesses, "actually, there was only one transaction, the option being part of the consideration of the deed of sale of the property"; that it did not have elements of fact to determine whether appellant sustained damages on account of his not being able to extract gravel pursuant to the provisions of deed No. 51. It concluded that "the option does not fail legally for lack of cause or consideration. . . . On the other hand, the term for the exercise of the option was five years to be counted 'from the time he begins to use said gravel.' It is clear that this is one of the cases in which the court cannot abide by the literal sense of the words used. Therefore, it is important for the court to understand that what was meant to be said was that the five years for the payment of 10 cents per meter of gravel would begin when he began extracting the gravel from the property. Said in another manner, the debtor of this obligation to pay 10 cents per meter of gravel would comply with that obligation when he began to extract the gravel, but the term for extracting the gravel was not fixed.

"The term not having been fixed, the court has legal power to fix it. From this point of view the court admits not having an element of fact clearly controlling. But, considering the term of three years for the payment of the $3,432 which was considered as reasonable by the parties for the property

bought by plaintiff from the defendants, taking into account that the option and the sale are considered as a sole transaction, this court determines that a term of three years, as of the execution of the option deed, is a reasonable term within which the same should have been exercised. Moreover, considering the dynamics of economics so marked in our times, a greater term would not be reasonable in the opinion of the court.

"Therefore, the lease of the property having been carried out by the defendants on November 3, 1961, the term of three years had already elapsed and, therefore, defendants had not violated any option because reasonably, in absence of a contractual provision to that effect in November 1961, the same already lacked legal efficacy. This legal conclusion is regardless of the fact that the option is also ineffective, because its compliance depended exclusively on the debtor, and the time was an essential element for defendants."

Appellant assigns four errors. The consideration of the first makes it unnecessary to consider the others.

Appellant argues that the trial court erred in determining that the term which appellant had to assert his deed of sale of gravel was three years, since it was signed on August 30, 1957; that § 1081 of the Civil Code (31 L.P.R.A. § 3064)[1] is not applicable; that the principle to be applied is the one established in § 1340 (31 L.P.R.A. § 3747).[2]

---

[1] Section 1081 provides that:

"Should the obligation not fix a period, but it can be inferred from its nature and circumstances that there was an intention to grant it to the debtor, the courts shall fix the duration of the same.

"The court shall also fix the duration of the period when it may have been left to the will of the debtor."

[2] Section 1340 provides that:

"A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfilment of the contract.

"Whenever the promise to purchase and sell cannot be fulfilled, the provisions of this subtitle relating to obligations and contracts, shall be observed by the vendor and by the vendee, as the case may be."

Also, it is said that in this case the appellees were bound to have appealed to the trial court to fix the term within which the referred option should have been exercised and that in not doing it appellant became empowered under the provisions of deed No. 51 to exercise his option at any time.

The agreement between the parties with respect to the extraction of gravel from the properties owned by appellees appears in the Fourth and Fifth clauses of deed No. 51, which read thus:

"FOURTH: That the contracting parties have agreed, and to that effect execute, an option deed for the purchase of the gravel which is located in the properties owned by Teresa Álvarez Rodríguez and Eloísa Álvarez Rodríguez, previously described, Sinesio Díaz Álvarez commits himself to pay said gravel at the rate of ten cents per meter.

"FIFTH: That said contract would be in force for five years, to be counted from the time he begins to use said gravel."

It is evident that an option is involved. The rights arising therefrom are made effective for five years, to be counted from the time appellant "begins to use said gravel." 4 Castán, *Derecho Civil Español* 43; 3 Puig Peña, *Compendio de Derecho Civil Español* 536.

In *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49, 56 (1917), we said that it was not necessary to bring a previous action exclusively to determine a time for payment, and that the whole matter could be definitely disposed of in one action and by a single judgment. In *Jiménez* v. *Ramos*, 51 P.R.R. 375, 378 (1937), we added that "in the furtherance of justice and for the sake of speediness in the proceedings, we should adhere to the [referred] rule." Then in *Rivera* v. *Cardona*, 56 P.R.R. 786, 790 (1940), referring to § 1081 of the Civil Code, we said that:

"A strict construction of this provision requires, in the cases to which the same refers, that resort first be had to the court for it to fix the period, and only when the same is fixed and has

expired without the obligation being performed may the action be established for compelling its execution. It might be countered that so long as the period previously fixed by the court has not expired no cause of action has accrued and that, therefore, an action brought prior to the fixing of the period would be prema- ture. This court, however, has unanimously, in *Nicorelli v. Ernesto López & Co.*, 26 P.R.R. 49, in the furtherance of justice and for the sake of speediness in the proceedings, rejected the strict construction to which we have referred and construed said section in the sense that the fixing of the time to which section 1081, *supra*, refers, may be done within the action to enforce the obligation."[3]

Section 1081 is applicable to obligations in general and the question of what is a reasonable time is more or less a matter of fact for the court. The latter "is bound to deter- mine, as a question of fact, or as a mixed question of law and fact, whether under all the circumstances there was an unreasonable delay." *G. H. Hammond & Co.* v. *D. Agüeros & Co.*, 30 P.R.R. 567, 570 (1922). See, also, *Prieto* v. *Hull Dobbs Co.*, 88 P.R.R. 407, 411 (1963); *Sánchez* v. *De Choudens*, 76 P.R.R. 1, 10 (1954); 8 Manresa, *Comentarios al Código Civil Español* 452, 453, 454, 6th ed.; XIX Scaevola, *Código Civil* 799, 2d ed.; Puig Peña, *op. cit.* at 538.

There is no doubt, therefore, that it being a question of an option without a fixed term to exercise it, it was incumbent upon the trial court to fix said term. It could have been done in the action filed for the specific fulfilment of said obligation. Under the circumstances of the case we agreed with the trial court that the term of three years was a reasonable term to exercise said right of option and that upon appellant's not making it effective within said period, the option became extinguished, "it already lacked legal efficacy," as said trial court concluded.

[3] Notice that if a literal construction of § 1081 of the Civil Code would prevail, the cause of action in this case would not lie since it would be premature on account of its having been filed by appellant prior to having requested and obtained the fixing of the term by the trial court.

122

In view of the foregoing, the judgment rendered in this case by the Superior Court, Bayamón Part, on October 7, 1967, will be affirmed.

Mr. Chief Justice and Mr. Justice Dávila did not participate herein. Mr. Justice Blanco Lugo concurs in the result.